Filed 6/10/13  P. v. Morales CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061830 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD232698) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| ALEJANDRO JOSE MORALES, | NO CHANGE IN JUDGMENT |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on May 16, 2013, be modified as follows:

1.  On page 3, first sentence of the second paragraph, the modifier "eight-month" in the phrase "eight-month prison term sentence" is changed to "two-year" and the words "and stayed" are inserted between the words "imposed" and "for," so the sentence reads:

> We conclude Morales's count 3 grand theft conviction, the related $40 court security fee (§ 1465.8, subd. (a)(1)) and $40 criminal conviction assessment (Gov. Code, § 70373), and the two-year prison term sentence the court imposed and stayed for this count 3 conviction all must be reversed, and on remand the court's sentencing minutes and the abstract of judgment must be corrected accordingly.

2.  On page 15, first sentence of the first paragraph in the last clause beginning with "and the eight-month prison term" and ending with "must be reversed," the modifier

"eight-month" is changed to "two-year" and the words "and stayed" are inserted between the words "imposed" and "for," so the clause reads:

> and the two-year prison term the court imposed and stayed for Morales's unauthorized count 3 conviction also must be reversed.

3.  In the first sentence of the Disposition on page 22, the modifier "eight-month" in the phrase "eight-month prison term sentence" is changed to "two-year" and the words "and stayed" are inserted between the words "imposed" and "for," so the sentence reads:

> We reverse Morales's count 3 grand theft conviction, the related $40 court security fee (§ 1465.8, subd. (a)(1)) and $40 criminal conviction assessment (Gov. Code, § 70373), and the two-year prison term sentence the court imposed and stayed for this count 3 conviction.

There is no change in the judgment.

Respondent's petition for rehearing is denied.


NARES, Acting P. J.


Copies to:  All parties


2

Filed 5/16/13  P. v. Morales CA4/1 (unmodified version)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061830 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD232698) |
| ALEJANDRO JOSE MORALES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Einhorn, Judge.  Reversed in part, affirmed in part, and remanded with directions.

Cannon & Harris, and Donna L. Harris under appointment by the Court of Appeal for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina and Kimberley A. Donohue, Deputy Attorneys General for Plaintiff and Respondent.

This case arose out of a series of burglaries and thefts committed between late 2010 and early 2011 at Nordstrom and Nieman Marcus department stores in San Diego County. A jury convicted Alejandro Jose Morales of one count of robbery (count 1: Pen. Code, § 211; undesignated statutory references will be to the Penal Code), six counts of burglary (counts 2, 4, 6, 8, 10 & 12): § 459), and six counts of grand theft of personal property (counts 3, 5, 7, 9, 11 & 13: § 487, subd. (a)).[1] Morales admitted a count 1 allegation that he was on parole at the time he committed the robbery (§ 1203.85, subd. (b)). He also admitted he had one prison prior (§§ 667.5, subd. (b), 668).

The court struck the prison prior allegation that Morales admitted, and sentenced him to an aggregate state prison term of five years four months, consisting of (1) the lower term of two years for Morales's robbery conviction; plus (2) the middle term of two years for his count 2 burglary conviction, which the court stayed under section 654; plus (3) imposed but stayed two-year terms for each of his six grand theft convictions (counts 3, 5, 7, 9, 11 & 13); plus (4) eight-month terms (one-third the middle term) for each of his five remaining burglary convictions (counts 4, 6, 8, 10 & 12). The court also ordered Morales to pay victim restitution—jointly and severally with his codefendant Derrick Christophe DeLeon—in the total amount of $10,875.50—$1,350 to Nieman Marcus and $9,525.50 to Nordstrom—plus various fines, fees and assessments.

---

[1] The same jury convicted Morales's codefendant, Derrick Christophe DeLeon (DeLeon), who is not a party to this appeal, of counts 1, 2, 3, 12 and 13.

Morales appeals, contending (1) his count 3 grand theft conviction should be reversed because it is a lesser included offense of the count 1 robbery he was convicted of committing on February 11, 2011, at Neiman Marcus in the Fashion Valley Mall; (2) the use of DeLeon's extrajudicial statements to police violated his (Morales's) Sixth Amendment right to confront and cross-examine the witnesses against him; and (3) the abstract of judgment should be corrected to reflect that his obligation to pay victim restitution in the amount of $1,350 to Nieman Marcus and $9,525.50 to Nordstrom is joint and several with codefendant DeLeon.

We conclude Morales's count 3 grand theft conviction, the related $40 court security fee (§ 1465.8, subd. (a)(1)) and $40 criminal conviction assessment (Gov. Code, § 70373), and the eight-month prison term sentence the court imposed for this count 3 conviction all must be reversed, and on remand the court's sentencing minutes and the abstract of judgment must be corrected accordingly. We also conclude the portion of the judgment imposing on Morales joint and several liability with DeLeon for victim restitution to Nieman Marcus and Nordstrom in the total amount of $10,875.50 ($1,350 to Nieman Marcus and $9,525.50 to Nordstrom) must be modified to reflect joint and several victim restitution liability with DeLeon in the amount of $1,350 to Nieman Marcus for the offenses he and DeLeon committed on February 11, 2011 (counts 1, 2 & 3) and $2,575 to Nordstrom for the offenses they committed on September 27, 2010 (counts 12 & 13), for a total joint and several victim restitution liability of $3,925. In all other respects, we affirm the judgment and remand the matter with directions.

3

FACTUAL BACKGROUND

A. *The People's Case*

1.· *February 11, 2011 Incident at Nieman Marcus* (*Fashion Valley Mall*) (*Counts 1, 2 & 3*)

The prosecution presented evidence that on February 11, 2011, Morales and his accomplice, DeLeon, entered Neiman Marcus in the Fashion Valley Mall in San Diego with the intention of stealing two Gucci handbags.  Suzanne Mason, a sales associate, testified that DeLeon had previously entered the store a few days earlier on February 6, and, when she became uncomfortable while speaking with him, she called a loss prevention employee, Gabriel Jellison.  Jellison testified he received a phone call from a Mason that day notifying him that two men in the store were acting suspiciously.  He located the two men on the surveillance cameras and started recording them.  Based on the video, Jellison identified the two men as Morales and DeLeon.

According to Mason, DeLeon returned to the store on February 11 accompanied by a tall man she identified as Morales.  Morales and DeLeon separated as soon as they walked in.  Morales walked directly to the Gucci handbag department while DeLeon garnered Mason's attention under the pretext of asking her for help to find a handbag to purchase from a different section of the handbag department.  Mason directed DeLeon to speak with another sales associate, Mary McFadden, so she could walk over to Morales.  When she entered the Gucci handbag department, Mason asked Morales if he needed any help.  Morales did not respond to her, but mumbled "[f]uck" several times to himself as he was handling one of the Gucci purses.

4

The purses Morales was handling were secured to the display wall by means of a cable that the store typically installs on their higher valued items. Mason testified she saw Morales take out a knife-like tool and cut the cables. Because he made her uncomfortable, Mason called Salomon Maya, the store's assistant loss prevention manager. Meanwhile, after having successfully cut the security cables to two Gucci handbags, Morales took those two handbags and ran out of the north entrance of the store towards a waiting car.

Maya, who identified Morales at trial, watched Morales on the store's video surveillance cameras and when Morales ran out of the store, he also ran out in an attempt to detain Morales. When he reached the sidewalk, Maya identified himself as "Nieman Marcus Loss Prevention" and tried to take back the handbags Morales had taken. When he did so, Morales engaged in a struggle and dropped one of the handbags he was holding. At that same time, Maya felt a pain in his lower back, which caused him to drop to a knee. Morales ran to a waiting car with the other handbag, got in, and left.

Meanwhile, according to McFadden, DeLeon saw Morales leave the store. DeLeon turned to McFadden, and sarcastically said, "Oh, no, that just didn't happen." He then turned around and walked out of the store. McFadden identified both Morales and DeLeon at trial.

Maya, who had just been injured, saw DeLeon get into the rear passenger side of the same getaway car. Police recovered the missing handbag, valued at $1,350, in March 2011 during a search of Morales's home.

5

2. *January 1, 2011 incident at Nordstrom* (*Horton Plaza*) (*Counts 4 & 5*)

The prosecution also presented evidence that on January 1, 2011, Morales entered the Nordstrom department store at Horton Plaza with the intention of stealing Burberry jackets. Deborah Steinberg, a salesperson, testified that when she approached Morales and asked him whether he needed any assistance, he made eye contact with her but remained quiet. She showed him a particular jacket, but he did not seem interested. Steinberg, who had heard reports about the theft of Burberry jackets at her store as well as the Fashion Valley Nordstrom, thought that Morales, who smelled of alcohol, was acting suspiciously. Steinberg testified that as she was about to call the store's loss prevention department, Morales "picked up three Burberry jackets, turned to his left, and walked towards the exit of the store." He walked straight to the exit doors, and without paying, left with the jackets, which were valued at $1,185 ($395 each). Steinberg later identified Morales both at a photographic lineup and at trial.

The store's loss prevention manager, Jesse Ochoa, testified that after he received the telephone call from Steinberg about a man who was walking toward the exit with three jackets, he reviewed the surveillance video recording and saw the man Steinberg had described as the man was walking out of the store. The video was played for the jury. Ochoa identified Morales at trial.

3.  *November 29, 2010 incident at Nordstrom* (*Fashion Valley Mall*) (*counts 6 & 7*)

Next, the prosecution presented evidence that about one month earlier, on November 29, 2010, Morales entered the same Nordstrom at Fashion Valley Mall with the intention of stealing Burberry coats.  Mandy Strauss, a sales manager working there with her assistant, Marisha LaHaye, testified that when she approached Morales to see if he needed any help finding something, he was standing at a sales rack where the Burberry coats were hanging, rearranging the hangers in a manner that would make it easier for him to pick up multiple items at once.  Strauss and LaHaye watched as Morales took four coats off of the rack and began walking, then jogging towards the door.

When Strauss realized that Morales was jogging toward the door, she said, "Hey, you can't do that."  She walked after him and called the loss prevention department.  Morales left the store without paying for the jackets, which were each valued at $395, for a total value of $1,580.

LaHaye identified Morales at trial.  Strauss also identified Morales at trial, but acknowledged she did not recognize him in the courtroom during the preliminary hearing, and she was unable to identify him in a photographic lineup on January 31, 2011.

4.  *November 9, 2010 incident at Nordstrom* (*Fashion Valley Mall*) (*counts 8 & 9*)

The prosecution also presented evidence that about three weeks earlier, on November 9, 2010, Morales entered the same Nordstrom store with the intention of

7

stealing merchandise.  Andrew Davidson, a loss prevention manager, testified that as he was using the security cameras located within the store, he zoomed in on Morales and saw him exiting the store through the second floor west exit with several items of merchandise placed over his arm.  Davidson then exited through the same doors near the adjacent parking structure where he waited for about 10 to 15 minutes.  Davidson then began to walk down the staircase of the parking structure, where he passed Morales, who threw away a beer can in a brown paper bag.  Davidson saw appellant reenter the store, grab some more merchandise, and walk out of the store.  Davidson notified additional loss prevention employees and followed Morales out of the store.  Morales began running as soon as he exited the store, and Davidson lost sight of him shortly thereafter.

Nordstrom employees conducted an inventory and determined that Morales had stolen seven items:  five coats valued at $399.90 each and two fur vests valued at $498 each, for a total value of $2,995.50.

Davidson testified he later collected the beer can that Morales had thrown away and gave it to a police officer.  Criminalist Coral Luce testified she performed DNA testing on the beer can.  Luce developed a DNA profile for a single individual from genetic material on swabs taken from the mouth area of the can that matched Morales's DNA profile.  Luce calculated that the probability that a random individual would possess the same DNA profile was one in 150 quintillion for the Hispanic population.

5. *October 11, 2010 incident at Nordstrom* (*Fashion Valley Mall*) (*counts 10 & 11*)

The prosecution also presented evidence that about a month earlier, on October 11, 2010, Morales entered Nordstrom at Fashion Valley Mall with the intention of stealing Burberry jackets. Davidson, who was working in the loss prevention office, testified he received a call from an employee on the sales floor who reported that Morales had picked up some merchandise and was walking away with it. Davidson immediately went to the sales floor to conduct a live observation. Seeing Morales leave the store without paying for the merchandise, Davidson followed him outside to the parking structure. Davidson later went to Studio 121, the department from which Morales had stolen the merchandise, and confirmed with the sales associates in that department that Morales had stolen one Burberry jacket worth $495 and another Burberry jacket worth $695, for a total of $1,190.

6. *September 27, 2010 incident at Nordstrom* (*Fashion Valley Mall*) (*counts 12 & 13*)

The prosecution also presented evidence that about two weeks earlier, Morales and his accomplice DeLeon entered the same Nordstrom store on September 27, 2010, with the intention of stealing Burberry clothing. Morales entered the Special Occasion department in the store and, together with DeLeon, took five Burberry items: three Burberry coats, each valued at $795, and two Burberry shirts, each worth $95, for a total value of $2,575. After sales associates reported the theft to Annette Lewis, a loss prevention employee, Lewis reviewed the surveillance video from that department and

9

observed two males (Morales and DeLeon) taking the merchandise without paying for it. The video was played for the jury. She contacted San Diego Police Department and confirmed with the sales associates that an inventory of the store reflected the five missing pieces of merchandise.

7. *DeLeon's statements to police*

Detective Jose Perez of the San Diego Police Department was assigned to the investigation of the September 27, 2010 incident. Through his investigation, Detective Perez identified DeLeon as a suspect and interviewed him about the theft. Detective Perez testified that DeLeon admitted he was involved in the September 27 theft at Nordstrom in Fashion Valley and that he stole a jacket in order to pay his rent.

8. *Police search of Morales's home*

On March 1, 2011, detectives and officers from the San Diego Police Department executed a search warrant at Morales's home in Chula Vista. When they arrived, Officer Eric Stafford was stationed at the rear exit of the home from where he saw Morales, who was barefoot and in boxer shorts, exit the building and begin to run away. Morales complied when Officer Stafford ordered him to stop. During the search of Morales's home, officers found the Gucci handbag that had been stolen from Neiman Marcus on February 11, 2011. They also found and confiscated Morales's Blackberry telephone. When they examined the data contained on the telephone, they found multiple pictures of the handbag, multiple pictures of Morales with DeLeon, and multiple text messages showing that Morales had attempted to sell the Gucci handbag.

B. *The Defense*

Neither Morales nor DeLeon testified. Morales called two witnesses—his grandmother, Carmen Brown, and his aunt, Andrea Chavez—to testify about his health at the time of the crimes. They both testified Morales had been sick and suffered a collapsed lung. He was hospitalized and underwent lung surgery in January 2011.

On cross-examination, Brown acknowledged that during the period from September 2010 to January 2011, Morales was able to walk and was healthy enough to work. She financially assisted Morales. Brown also testified that Morales was able to walk when he got out of the hospital.

DISCUSSION

I. *COUNT 3 GRAND THEFT CONVICTION*

Morales contends his count 3 grand theft conviction should be reversed because it is a lesser included offense of the count 1 robbery he was convicted of committing on February 11, 2011, at Neiman Marcus in the Fashion Valley Mall. We agree and conclude Morales's count 3 grand theft conviction must be reversed.

A. *Applicable Legal Principles*

Section 954 generally permits multiple convictions for different offenses arising out of the same act or course of conduct.[2] (*People v. Reed*, *supra*, 38 Cal.4th at pp. 1226-1227.)

---

[2] "Section 954 states that '[a]n accusatory pleading may charge . . . different statements of the same offense' and 'the defendant may be convicted of any number of the offenses charged.' " (*People v. Ortega* (1998) 19 Cal.4th 686, 699, disapproved on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1229, 1231.)

"However, an exception to this general rule allowing multiple convictions prohibits multiple convictions based on necessarily included offenses." (*People v. Medina* (2007) 41 Cal.4th 685, 701.) Under this exception, "multiple convictions may not be based on necessarily included offenses arising out of a single act or course of conduct." (*People v. Lewis* (2008) 43 Cal.4th 415, 518.) A lesser offense is necessarily included within a greater offense if the greater offense cannot be committed without also committing the lesser offense. (*Ibid.*; *People v. Sanchez* (2001) 24 Cal.4th 983, 988, overruled on another point in *People v. Reed*, *supra*, 38 Cal.4th at pp. 1228-1229.)

The rule prohibiting convictions for both a greater offense and a necessarily included lesser offense is based on the rationale that if the greater offense cannot be committed without committing the lesser, conviction of the greater is also conviction of the lesser, and thus to permit conviction of both offenses would allow the defendant to be convicted twice of the lesser offense. (*People v. Medina*, *supra*, 41 Cal.4th at p. 702.)

Grand theft "is a necessarily included offense of robbery," and it is "[a] well-established rule that a defendant may not be convicted of both robbery and grand theft based upon the same conduct." (*People v. Ortega*, *supra*, 19 Cal.4th at p. 699.)

B. *Analysis*

In support of his claim that his count 3 grand theft conviction should be reversed because it is a lesser included offense of the count 1 robbery he was convicted of committing on February 11, 2011, at Neiman Marcus, Morales argues that Nieman Marcus was the victim of the theft of the handbags inside the store, and it was also the named victim of the robbery he committed when he and Maya, the store's assistant loss

12

prevention manager, struggled over the handbags outside the store. Citing *People v. Estes* (1983) 147 Cal.App.3d 23 (*Estes*), Morales asserts he "committed theft when he removed the handbags from the store," and "[h]e was engaged in the asportation element of the [grand] theft offense when he engaged in the use of force or fear in an attempt to retain possession of the merchandise, thereby transforming the crime committed to robbery." Citing *People v. Ortega*, *supra*, 19 Cal.4th 686, he also argues that "[t]he grand theft charged in count [3] was a necessarily lesser included offense of the robbery charged in count [1] because [he] could not have committed the robbery without also committing the theft"; and, thus, his count 3 conviction must be reversed "because he may not stand convicted of both a greater and a lesser included offense." We agree.

*Estes* is virtually on point and governs our decision. In that case, a department store security guard observed the defendant take some items of merchandise and leave the store without paying for them. (*Estes*, *supra*, 147 Cal.App.3d at p. 26.) Nothing in that case suggests the defendant used "force or fear" (see § 211) at the time he took possession of the merchandise inside the store. (See *Estes*, *supra*, at p. 26.) When the security guard followed the defendant outside the store to the parking lot, he identified himself and attempted to detain the defendant. (*Ibid.*) The defendant pulled out a knife and threatened to kill the guard, who returned to the store for help. (*Ibid.*) A jury convicted the defendant of both robbery and petty theft arising out of the theft of the merchandise from the store. (*Ibid.*)

13

On appeal, the *Estes* court—noting that the guard, who was employed to prevent thefts of merchandise, had "constructive possession" of the merchandise to the same degree as a salesperson—upheld the defendant's robbery conviction because "[t]he evidence establishe[d] that [he] forc[i]bly resisted the security guard's efforts to retake the property and used that force to remove the items from the guard's immediate presence." (*Estes*, *supra*, 147 Cal.App.3d at p. 27.) However, the *Estes* court reversed the petty theft conviction, holding that the theft "was a lesser included offense to the robbery." (*Id.* at p. 29.)

Similarly here, substantial evidence (discussed, *ante*, in the factual background) shows Morales committed the grand theft charged in count 3 by taking possession of the two Gucci handbags in question inside the Nieman Marcus store and leaving without paying for them, and then committed the robbery charged in count 1, based upon the same larcenous course of conduct, by forcibly resisting Maya's efforts to retake the property, and using that force to remove one of the stolen handbags from Maya's immediate presence.

Thus, we conclude Morales's count 3 grand theft conviction must be reversed because that crime is a lesser offense necessarily included in his count 1 robbery offense. (See *Estes*, *supra*, 147 Cal.App.3d at p. 29; see also *People v. Ortega*, *supra*, 19 Cal.4th at p. 699 ["[A] defendant may not be convicted of both robbery and grand theft based upon the same conduct."].)

We also conclude that as a result of the reversal of Morales's count 3 conviction, the court security fee (§ 1465.8, subd. (a)(1)) that the court imposed in the total amount of $520 based on his conviction of 13 counts in this matter, should be reduced by $40 ($520 ÷ 13 = $40) to $480; the $390 criminal conviction assessment (Gov. Code, § 70373) should be reduced by $30 ($390 ÷ 13 = $30) to $360; and the eight-month prison term the court imposed for Morales's unauthorized count 3 conviction also must be reversed. The matter must be remanded with directions to the trial court to correct its March 16, 2012 sentencing minutes and to forward a corrected abstract of judgment to the Department of Corrections and Rehabilitation, as necessary.

## II. *EVIDENCE OF DELEON'S EXTRAJUDICIAL STATEMENTS*

Morales also claims the use of DeLeon's extrajudicial statements to police violated Morales's Sixth Amendment right to confront and cross-examine the witnesses against him. This claim is unavailing.

### A. *Background*

At trial, the prosecutor elicited from Detective Perez testimony about a police interview of Morales's codefendant, DeLeon, during which DeLeon admitted to Detective Perez and another officer that he was involved in both the Nieman Marcus burglary on February 11, 2011, and the Nordstrom burglary on September 27, 2010. Perez testified he showed DeLeon a photograph of a Burberry jacket and a polo shirt similar to the items taken from Nordstrom on September 27, 2010. DeLeon admitted he took the Burberry jacket and said he "used it to pay for rent, in exchange for rent." DeLeon also told Detective Perez he was at Nordstrom that day to serve as a lookout or distraction.

15

Detective Perez also testified that DeLeon recognized himself in two photographs taken from a surveillance video showing DeLeon inside the Nordstrom store on September 27, 2010. In response to seeing these photographs, DeLeon stated, "Damn. I told that fool."

DeLeon's trial counsel cross-examined Detective Perez about several specific statements DeLeon made during his interview with police. DeLeon's counsel read several excerpts of the transcript of DeLeon's police interview and asked Detective Perez whether DeLeon made those statements. Those statements included:

> (Referring to the February 11, 2011 incident at Nieman Marchus at the Fashion Valley Mall:) "You know what. I'm a man. I got balls. That's me. Hey, I went in the store. I went in there clueless. I didn't know what the fuck was going on. Bam, bam, bam. Everything was over. Before I know it, before I found out, I found myself at the fucking trolley stop waiting for the trolley."
>
> (When asked about the struggle that "Mr. Morales" got into at Nieman Marcus that day:) "I didn't see that part. All I know is that I barely caught them in time to hop in the car. They were driving off and trying to leave me[]."
>
> "Check it out. I get in the car. They're arguing over some fucking bag . . . . I don't want nothing to do with this."
>
> (When asked how many times he hit "the guy" (Maya) in the back:) "I don't know. Like I told you, I was coming out of the store. They were already driving off, and I barely made it to the car."
>
> "But if you all have the video, that video is going to show you that I didn't even hit the dude at all. It's going to show you that I ran straight to the car. It was driving, taking off."
>
> "I didn't lay hands on him. I swear to God it wasn't me. When I got out the door they were already in the car."
>
> "I went to be a distraction."

16

"Putting all bullshit to the side, man, this is what happened. I was like—I'm in the store, yadda, yadda, yadda. All of a sudden I hear a bunch of people yell. I see everyone running to the front. I walked out. I see in the Guess lot dude, like spin off one bag, then the car, and I start running after. So I get in the car, you know."

The prosecutor objected to this line of questioning, stating that DeLeon's counsel should not "be allowed to testify under *Aranda/Bruton*"[3] in light of the court's order limiting the admission of such statements. He also stated, "[T]hey're a random group and they all involve his discussion about the other defendant [(Morales)]."

After hearing argument from counsel, the court sustained the prosecutor's objection and directed DeLeon's counsel to move on to a different line of questioning. Morales's trial counsel moved to strike "anything related to [Morales]," and stated, "In other words, the name Alex or Alejandro or Morales that was brought out in [Detective Perez's] testimony." The court did so, instructing the jury, "You're instructed to disregard any question or any answer wherein reference was made to Alex Morales, Mr. Morales, or Alejandro Morales. Treat it as though you had not heard it."

B. *Applicable Legal Principles*

1. *Aranda-Bruton and the Sixth Amendment right of confrontation*

"The confrontation clause of the Sixth Amendment to the federal Constitution, made applicable to the states through the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

---

3    *People v. Aranda* (1965) 63 Cal.2d 518 (*Aranda*); *Bruton v. United States* (1968) 391 U.S. 123 (*Bruton*).

17

witnesses against him.' The right of confrontation includes the right of cross-examination." (*People v. Fletcher* (1996) 13 Cal.4th 451, 455 (*Fletcher*).)

A recurring problem in the application of the Sixth Amendment right of confrontation concerns an out-of-court statement by one defendant that incriminates both that defendant and a jointly charged codefendant. (*Fletcher*, *supra*, 13 Cal.4th at p. 455.) "Generally, the [out-of-court statement] will be admissible in evidence against the defendant who made it (the declarant)." (*Ibid.*, citing Evid. Code, § 1220 [hearsay exception for party admissions].) However, if the declarant does not submit to cross-examination by the codefendant (the nondeclarant), "admission of the [out-of-court statement] against the nondeclarant is generally barred both by the hearsay rule (Evid. Code, § 1200) and by the confrontation clause (U.S. Const., 6th Amend.)." (*Fletcher*, *supra*, 13 Cal.4th at p. 455.)

The California Supreme Court has explained in *Bruton supra,* 391 U.S. 123 that "[t]he United States Supreme Court . . . held that, because jurors cannot be expected to ignore one defendant's confession that is 'powerfully incriminating' as to a [codefendant] when determining the latter's guilt, admission of such a confession at a joint trial generally violates the confrontation rights of the nondeclarant." (*Fletcher*, *supra*, 13 Cal.4th at p. 455, citing *Bruton*, at pp. 126-137.) In *Aranda, supra,* 63 Cal.2d 518, the California Supreme Court reached a similar conclusion on nonconstitutional grounds. (*Fletcher*, at p. 455, citing *Aranda*, at pp. 528-530.)

18

Thus, at a joint trial, *Aranda* and *Bruton* bar admission of a nontestifying—defendant's out-of-court statement that incriminates a codefendant, even if the court instructs the jury to consider the statement in determining the guilt only of the declarant, because admission of the statement violates the codefendant's Sixth Amendment right of confrontation.  (*Bruton*, *supra*, 391 U.S. at pp. 126, 135-137; *Aranda*, *supra*, 63 Cal.2d at pp. 529-530; *Fletcher, supra*, 13 Cal.4th at p. 455; see 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, §§ 375-379, pp. 541-545.)

*Aranda-Bruton* error is not reversible per se, but is scrutinized under the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).  (*People v. Burney* (2009) 47 Cal.4th 203, 232.)  Under the *Chapman* harmless error standard, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."  (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 681; see *Chapman*, *supra*, at p. 24.)  In determining whether evidence improperly admitted in violation of *Aranda-Bruton* so prejudiced a defendant that reversal of the judgment of conviction is required, the error will be deemed harmless "'if the properly admitted evidence is overwhelming and the incriminating extrajudicial statement is merely cumulative of other direct evidence.'"  (*People v. Burney*, *supra*, at p. 232.)

C.  *Analysis*

We shall assume, for purposes of analysis, that some of the out-of-court statements DeLeon made to Detective Perez were admitted in violation of the *Aranda-Bruton* rule (discussed, *ante*) by implicating Morales in the crimes committed during the February 11,

19

2011 incident at Nieman Marcus in Fashion Valley Mall (counts 1-3) and during the previous September 27, 2010 incident at Nordstrom in that mall (counts 12 & 13).[4] The issue we must decide is whether the assumed constitutional error was harmless beyond a reasonable doubt under the *Chapman* harmless error standard; that is, whether the properly admitted evidence of Morales's guilt is overwhelming and any incriminating extrajudicial statements are merely cumulative of other direct evidence. (See *Delaware v. Van Arsdall*, *supra*, 475 U.S. at p. 681; *Chapman*, *supra*, 386 U.S. at p. 24; *People v. Burney*, *supra*, 47 Cal.4th at p. 232.)

After reviewing the entire record, we conclude the assumed *Aranda-Bruton* error was harmless beyond a reasonable doubt. Three separate eyewitnesses—Mason, McFadden, and Maya—identified Morales at trial as the person who stole the Gucci handbags from Nieman Marcus on February 11, 2011. Jellison, another Nieman Marcus loss prevention employee, identified Morales and DeLeon at trial as the two men seen suspiciously casing that store on February 6, 2011. The testimony of Officer Stafford and Detective Christopher Leahy established that, during the search of Morales's home, officers found the Gucci handbag that had been stolen from Neiman Marcus on February 11, 2011. The police also found and confiscated Morales's Blackberry telephone. Detective Perez's testimony established that the data contained on the telephone was later examined, revealing multiple pictures of the handbag, multiple pictures of Morales with DeLeon, and multiple text messages showing that Morales had attempted to sell the

---

4      As already noted, both Morales and DeLeon were convicted of the offenses charged in counts 1, 2, 3, 12, and 13.

20

Gucci handbag. In addition, the jury saw surveillance videos showing Morales (1) casing Nieman Marcus with DeLeon on February 6, 2011; (2) taking the Gucci handbags inside that store on February 11, 2011; and (3) inside Nordstrom with DeLeon during the commission of the crimes on September 27, 2010.

In sum, any *Aranda-Bruton* error was harmless beyond a reasonable doubt because the properly admitted evidence of Morales's guilt was overwhelming and DeLeon's extrajudicial statements were merely cumulative. (See *People v. Burney*, *supra*, 47 Cal.4th at p. 232.)

### III. *ABSTRACT OF JUDGMENT*

Last, Morales contends the abstract of judgment should be corrected to reflect that his obligation to pay victim restitution in the amount of $1,350 to Nieman Marcus and $9,525.50 to Nordstrom is joint and several with codefendant DeLeon.

The Attorney General acknowledges, and we agree, that the abstract of judgment should be corrected on remand to specify that Morales's joint and several liability for victim restitution is limited to the amount of $1,350 to Nieman Marcus for the offenses he and DeLeon committed on February 11, 2011 (counts 1, 2 & 3), and $2,575 to Nordstrom for the offenses they committed on September 27, 2010 (counts 12 & 13), for a total joint and several restitution liability of $3,925. The court's March 16, 2012 sentencing minutes should also be corrected to reflect these modifications.

DISPOSITION

We reverse Morales's count 3 grand theft conviction, the related $40 court security fee (§ 1465.8, subd. (a)(1)) and $40 criminal conviction assessment (Gov. Code, 70373), and the eight-month prison term sentence the court imposed for this count 3 conviction. We modify the portion of the judgment imposing on Morales joint and several liability with DeLeon for victim restitution to Nieman Marcus and Nordstrom in the total amount of $10,875.50 ($1,350 to Nieman Marcus and $9,525.50 to Nordstrom), by reducing that joint and several liability to the amount of $1,350 to Nieman Marcus for the offenses he and DeLeon committed on February 11, 2011 (counts 1, 2 & 3), and $2,575 to Nordstrom for the offenses they committed on September 27, 2010 (counts 12 & 13), for a total joint and several victim restitution liability to Nieman Marcus and Nordstrom in the amount of $3,925. In all other respects, the judgment is affirmed. We remand the matter to the trial court with directions to correct the court's March 16, 2012 sentencing minutes and the abstract of judgment to reflect these modifications of the judgment, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NARES, Acting P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.

22